**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3833-14T1

SHAWN JULY,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted January 25, 2017 — Decided April 5, 2017

Before Judges Simonelli and Gooden Brown.

On appeal from the New Jersey Department of Corrections.

Shawn July, appellant pro se.

Christopher S. Porrino, Attorney General, attorney for respondent (Lisa A. Puglisi, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Shawn July, an inmate previously incarcerated at the New Jersey State Prison (NJSP), appeals from the October 29, 2014 final agency decision of the New Jersey Department of Corrections

(DOC), which continued his placement in involuntary protective custody (IPC).[1]  Having considered the arguments and applicable law, we affirm.

July is serving a sentence of twenty-two years, six months and thirteen days of imprisonment, with a seventeen-year period of parole ineligibility, for aggravated manslaughter, weapons and drug offenses.  According to the DOC, July is a member of a Security Threat Group (STG).[2]  On March 12, 2013, while incarcerated at East Jersey State Prison in Rahway, July stabbed another inmate in the neck with a shard of glass.  An investigation by the Special Investigations Division (SID) revealed that the assault was precipitated by a gang dispute.  That same day, July was transferred from East Jersey State Prison to NJSP in Trenton.

---

[1] On December 13, 2016, the DOC transferred July to the State Correctional Institution in Camp Hill, Pennsylvania, pursuant to the Interstate Corrections Compact (the Compact), N.J.S.A. 30:7C-1 to -12.  As codified, the Compact "empowers New Jersey to enter into contracts with other states 'for the confinement of inmates on behalf of a sending state in institutions situated within receiving states.'"  Van Winkle v. N.J. Dep't of Corr., 370 N.J. Super. 40, 45 (App. Div. 2004) (quoting N.J.S.A. 30:7C-4(a)).  Following his transfer, the State filed a motion to dismiss the appeal, arguing that since July was no longer in protective custody in New Jersey, his appeal was moot.  In an order entered on February 14, 2017, we denied the State's motion.

[2] A STG is a group of inmates who pose "a threat to the safety of the staff, other inmates, the community or causes damage to or destruction of property, or interrupts the safe, secure and orderly operation of the correctional facility(ies)."  N.J.A.C. 10A:1-2.2.

July was placed in prehearing IPC the following day after a SID investigator received information that he had acted against the etiquette of the STG, bringing a negative light to himself and others.  The investigator determined that IPC was warranted to ensure July's safety and the security of the institution. Accordingly, the DOC continued July's placement in IPC pending additional investigation by SID.[3]  Following reviews of July's status by the Institutional Classification Committee (ICC) on March 26, 2013, September 30, 2013, and May 5, 2014, July's placement in IPC was continued.

On August 12, 2014, the DOC served July with a "Notice of Protective Custody Hearing — Involuntary" pursuant to N.J.A.C. 10A:5-5.2(c)[4] notifying him of his upcoming IPC hearing before a Disciplinary Hearing Officer (DHO).  At the hearing conducted on September 3, 2014, July was afforded counsel substitute and the

---

[3]  N.J.A.C. 10A:5-5.1(c) provides that prehearing protective custody "shall be used when necessary in order to conduct an investigation. . . . [T]he Administrator or designee shall gather facts, information and available documentation to support or reject the placement and shall order such additional investigation as is deemed necessary for a clear understanding of the case."

[4]  N.J.A.C. 10A:5-5.2(c) provides that "[a] copy of Form 146-II [Notice of Protective Custody Hearing — Involuntary] shall be given to the inmate at least 24 hours prior to the in-person hearing."

opportunity to obtain and submit five witness statements from fellow inmates as well as other documentary evidence. July testified that there were no threats warranting his placement in IPC and argued that the length of time between his initial placement and the hearing violated his due process rights.

The DHO relied on a confidential report[5] prepared by the SID on May 8, 2014,[6] detailing its investigation. The hearing officer noted that the evidence July provided failed to contradict the SID's findings. Specifically, the DHO determined that July's witness statements were "vague" and did "not assist" his position. Based on the SID's confidential report, the DHO concluded that July's continued placement in IPC "is warranted to ensure [his] safety and the security of the institution." The DHO also referred July's case to the ICC for a possible transfer to another institution where he can remain in the general population.

---

[5] We do not discuss the contents of the confidential report at length here in order to preserve its confidentiality.

[6] In response to July's objection to the delay in preparing the report, the DHO noted that, while the evidence is clear that the SID did not prepare the report within the prescribed time frame, there was no prejudice to July because the hearing was non-punitive. Under N.J.A.C. 10A:5-5.2(i), "[i]nmates placed involuntarily in Prehearing Protective Custody shall receive a hearing within 20 business days after receipt of the notice, unless there are exceptional circumstances, unavoidable delays or reasonable postponements."

Thereafter, July filed an administrative appeal of his placement in IPC to the administrator of the NJSP. On October 29, 2014, the administrator affirmed July's placement in IPC. The administrator noted that the hearing complied with N.J.A.C. 10A:5-5.2, governing procedures for involuntary placement in protective custody, and "[a] review of all documentation support[ed] [July's] placement into this status." This appeal followed.

On appeal, July argues that his placement in IPC violated his substantive and procedural due process rights. He also asserts that there is insufficient credible evidence to support the DOC's decision to continue his placement in IPC. We disagree.

The scope of our review of a final agency decision is strictly limited. In re Taylor, 158 N.J. 644, 656 (1999). When reviewing an agency's decision, we consider whether: (1) the agency's decision violates the New Jersey Constitution or the Constitution of the United States; (2) "the agency's action violates express or implied legislative policies;" (3) there is substantial evidence to support the findings of fact upon which the decision is based; and (4) "in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors." Brady v. Bd. of Review, 152 N.J. 197, 210-11 (1997)

(quoting George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994)).

It is well settled that decisions of administrative agencies carry with them a presumption of reasonableness. Newark v. Natural Res. Council, 82 N.J. 530, 539, cert. denied, 449 U.S. 983, 101 S. Ct. 400, 66 L. Ed. 2d 245 (1980). Accordingly, "[a]n appellate court ordinarily will reverse the decision of an administrative agency only when the agency's decision is 'arbitrary, capricious or unreasonable or [] is not supported by substantial credible evidence in the record as a whole." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23 (App. Div. 2005) (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). "'Substantial evidence' means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). "The term has also been defined as 'evidence furnishing a reasonable basis for the agency's action.'" Ibid. (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (2002)).

Applying these standards, we discern no reason to disturb the DOC's decision to continue July's placement in IPC. The New Jersey Legislature has declared, "incarcerated offender[s] should be protected from victimization within [State correctional]

institution[s,]" N.J.S.A. 30:1B-3(c), and the DOC is responsible for implementing this legislative mandate. N.J.S.A. 30:1B-3. Where the DOC has fulfilled its statutory obligation to protect an incarcerated offender by placing him in IPC, as here, its action does not implicate due process principles applicable to certain other disciplinary proceedings. See Sandin v. Conner, 515 U.S. 472, 486, 115 S. Ct. 2293, 2301, 132 L. Ed. 2d 418, 431 (1995) (holding that administrative segregation and protective custody do not present "atypical, significant deprivation in which a State might conceivably create a liberty interest.").

Nevertheless, the DOC's regulations specify the conditions of protective custody, N.J.A.C. 10A:5-5.6 to -5.19, as well as procedures governing placement, N.J.A.C. 10A:5-5.2 and -5.3. Inmates may be placed in protective custody on the recommendation of the SID or correctional staff, or by order of a corrections official. N.J.A.C. 10A:5-5.1(a)(1), (3) and (4). An inmate may be placed in protective custody voluntarily or involuntarily, N.J.A.C. 10A:5-5.1(a)(5) and (6), but an inmate placed involuntarily is entitled to notice and a hearing before a disciplinary hearing officer, N.J.A.C. 10A:5-5.2.

The hearing must conform to the procedures delineated in N.J.A.C. 10A:5-5.2 and -5.3. Pursuant to those provisions: (1) the inmate is informed of all information relative to his placement

"with the exception of information designated confidential[,]" N.J.A.C. 10A:5-5.2(j); (2) is afforded an opportunity to "present any relevant evidence supporting or contesting placement . . . [,]" N.J.A.C. 10A:5-5.2(d)(3); and (3) is entitled "to receive the assistance of a counsel substitute[.]" N.J.A.C. 10A:5-5.2(g). An inmate placed in IPC may appeal the hearing officer's decision to the prison administrator or his designee, N.J.A.C. 10A:5-5.3, and is entitled to an in-person hearing once a year, or more often if deemed necessary, N.J.A.C. 10A:5-5.4(b).

Here, July argues that the hearing officer erred by relying upon the uncorroborated SID report, and asserts that there is insufficient evidence to support his placement in IPC. He also contends that his placement was not in accordance with the administrative regulations and violated his due process rights. We are satisfied that the DOC substantially followed the regulations governing IPC placements, N.J.A.C. 10A:5-5.1 to -5.24, and the hearing officer's final decision was supported by sufficient credible evidence in the record. Specifically, the SID's confidential report supports the determination that July would be at risk of serious harm if placed in the general population, and protective custody was warranted to ensure his safety and the security of the institution. Further, at his hearing, July was advised of the reason for his placement, provided

counsel substitute, and was afforded an opportunity to testify and present evidence contesting his placement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION